## FOREST CITY WALWORTH RUN
## FOUNDRIES CO v GRUBER

Ohio Appeals, 8th Dist, Cuyahoga Co
Decided May 25, 1931

Smith, Olds, Smith & Shepard, Cleveland,
for Forest City Walworth Run Foundries Co.

A. R. Thomas, Cleveland, for Gruber.

VICKERY, J.

Now it will be noted that this written guaranty—for of course it must have been a written guaranty because it promised to pay or be responsible for the debt of another,—is a continuing guaranty, and is limited only to the amount of $4,000 and it might run for a long time and could be revoked at any time by Emma Gruber by letter dispatched by registered mail to the plaintiff company, and that a receipt for the registered letter should be conclusive evidence of the cancellation or revocation of the guaranty which, as I have already stated, was a continuing guaranty. Now, there is nothing in this record to show, nor is it claimed, that such a letter, registered or otherwise, cancelling or revoking the guaranty was ever sent, nor is there a receipt to that effect signed by any person on behalf of the plaintiff company; but it is not claimed that that is absolutely necessary in order to terminate the guaranty, although it was the way in which the parties had contracted that this guaranty might be revoked, and inasmuch as it was a continuing guaranty it behooved the defendant to comply with the requirements of the guaranty for its revocation; and it might be questionable whether any evidence might be produced other than the method prescribed by the guaranty itself, but the plaintiff in error does not claim that it could not be terminated by other means. That is, the method of revocation might be waved, but as to the question of waiver the burden would be upon the one claiming the benefit of the waiver, and inasmuch as the guaranty is in writing and the contract itself being within the statute of frauds, the evidence introduced which would necessarily contradict the writing, must be clear and convincing.

Now it is important to bear this in mind. Mrs. Gruber claims that when this $2,900 was paid—and she swears to it on the witness stand, and her daughter who does not seem to know much else about it, testified in her mother's interest to the same effect,—that at the time when Mr. Seelbach representing plaintiff company went out there, she told him that she would not endorse the check or give him another check which he might cash, unless he would return the guaranty and that he promised to return it within a few days or she might come to the office and get it. This, however, he denies. He said he did not make any such promise, and that the question was not discussed by them. That at that time there was some $700 or more of goods that had been furnished the husband over and above the amount represented by the check, which would be secured by this guaranty, and other goods had been sold for which notes had been taken which were likewise covered by the guaranty, so that at the time this $2,900 settlement was made there would be another sum of about $3,000 due on this guaranty; that nothing was said which would discharge the company from furnishing goods to the husband, or, as we look at it, which would discharge Mrs. Gruber from liability under the guaranty. Thus it becomes a question of the weight of the testimony largely. There was a written guaranty which prescribed a way in which the guaranty might be revoked and what the evidence should be to prove such a revocation. Now had that been done there would not have been any question about this matter.

The writer of this opinion has a notion pretty strong that by the wording of this guaranty, that was perhaps the only way this guaranty could be revoked; however, it is not necessary to go that far, but it certainly puts the burden of the revocation of the guaranty by parol upon defendant in error, Mrs. Gruber.

Now the record shows that subsequent to the time of this so-called adjustment in June, 1927, when the $2,900 was paid, there were other goods which were furnished to the husband but no claim was made by Mrs. Gruber or her husband that this guaranty had been revoked. The guaranty had not been returned to her nor had she called for it, and in a talk afterwards about getting money to pay the account she joined her husband in seeking further time and said nothing about the guaranty having been revoked at the time she paid the $2,900. Here was a paper, drastic in its effect, that made her responsible up to $4,000, continuously responsible for that amount of money, and she never

got that paper nor made any claim for it, and if the attorney states the truth, no claim of this kind was made, and it does not appear in the record that it was made until the answer was filed in this law suit after she was sued upon the written guaranty. All of which tends to lessen the weight of the testimony of Mrs. Gruber. She is, in a measure, backed up by her daughter who does not seem to know anything else about the matter except that Mr. Seelbach was supposed to have promised to release her mother from liability. Now we have Mr. Seelbach's testimony that he did not make such a statement and circumstances would certainly make it improbable that he should make it; and, inasmuch as the defendant has the burden of proof concerning this waiver by clear and convincing evidence, it seems to us that the verdict of the jury was manifestly and palpably against the weight of the testimony.

We might go further. Certain requests were made to charge the jury before argument, one of which is as follows:

"I charge you as a matter of law, where the defendant has executed and delivered to the plaintiff a written guaranty, which guaranty provides it shall continue until revoked by a written letter from the defendant, such written guaranty cannot be revoked in any other manner, unless the plaintiff has waived the written revocation. I further charge you that the burden of proving the waiver of such written revocation is upon the defendant. Before you find such a waiver, the defendant must satisfy you by evidence that is clear and convincing that the plaintiff waived the provision regarding the written revocation of defendant's guaranty. If the evidence does not clearly and convincingly satisfy you that the plaintiff waived the written revocation, then your verdict should be for the plaintiff. If the evidence does clearly and convincingly satisfy you that the plaintiff waived the written revocation, then your verdict should be for the defendant."

Whether this charge ought to have been given, might be a question; the writer of this opinion, however, thinks that it states a correct proposition of law. It does use unfortunate language, words that our Supreme Court has criticized in two or three cases; that is, the word "satisfy" which is used two or three times, which might call for a higher degree of proof than is ordinarily necessary, but perhaps not in this kind of case; and so while we think the refusing to give this charge was erroneous upon the part of the court, who I believe, stated that he never heard of such law, yet we think under the circumstances it should have been given; but, inasmuch as it contains words that are subject to criticism, we hardly want to reverse the judgment upon that ground. But the court unanimously are of the opinion that the verdict in favor of defendant below was not sustained by sufficient evidence and is contrary to the greater weight of the evidence, under the theory that we have sought to lay down in this case.

There are other errors claimed in the record which we do not deem it necessary to discuss.

The judgment, therefore, will be reversed as being contrary to the weight of the evidence, and the case will be remanded to the trial court for a new trial.

LEVINE, PJ, and WEYGANDT, J, concur.